IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01610-EWN-CBS

THEODORE L. FINLEY,
    Plaintiff,
v.

CORRECTIONAL HEALTHCARE MANAGEMENT, and
JEFFERSON COUNTY DETENTION CENTER MEDICAL DEPARTMENT,
    Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on Defendant Correctional Healthcare Management's ("CHM") Motion for Summary Judgment (filed May 24, 2007) (doc. # 62). Pursuant to the Order of Reference dated September 8, 2006 (doc. # 9) and the memorandum dated May 25, 2007 (doc. # 63), the Motion was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Finley's Opposition (filed June 12, 2007) (doc. # 66), CHM's Reply (filed June 26, 2007) (doc. # 68), the exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    CHM provides medical treatment to inmates incarcerated at Jefferson County Detention Center ("JCDC"). Proceeding *pro se*, Mr. Finley filed his Complaint on August 15, 2006 pursuant to 42 U.S.C. § 1983, alleging malpractice and violation of his civil and constitutional rights. (*See* Complaint (doc. # 2) at pp. 3, 4, 8 of 8). Mr. Finley

alleges that while he was incarcerated at JCDC in December 2005, he sought medical treatment for a skin rash on his face and neck and that he was provided the wrong medication.  (*See* doc. # 2 at pp. 3-6 of 8).  Mr. Finley further alleges that Defendants refused to refer him to a dermatologist or to provide medication for his rash after he discontinued use of the improperly-prescribed medication.  (*See* doc. # 2 at p. 5 of 8). Mr. Finley seeks monetary damages.  (*See* doc. # 2 at p. 8 of 8).  CHM moves for summary judgment on several grounds.

II.     Standard of Review

> Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.
> 
> To meet the burden of production required to support summary judgment, the movant need only point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law.  Summary judgment will then lie if the movant establishes entitlement to judgment as a matter of law given [the] uncontroverted, operative facts. . . . Factual disputes that are irrelevant or unnecessary will not be counted.
> 
> Where a movant has met the initial burden required to support summary judgment, the non-movant then must either establish the existence of a triable issue of fact under Fed.R.Civ.P. 56(e) or explain why he cannot . . . under Rule 56(f).  Conclusory allegations made by a non-movant will not suffice.  Instead, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein.

*Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 674-75 (10th Cir. 2002) (citations omitted).

Because Mr. Finley's Complaint has been sworn to under penalty of perjury (*see* Complaint (doc. # 2) at p. 8 of 8), the court may treat it as an affidavit.  *Green v.*

*Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997).  *See also Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) ("Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)."). "Rule 56(e) requires that the affidavit be based on personal knowledge, contain facts which would be admissible at trial, and show that the affiant is competent to testify on the matters stated therein." *Conaway*, 853 F.2d at 792.

Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that 'conclusory allegations without specific supporting facts have no probative value.' " *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).  "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway*, 853 F.2d at 792-93.  An affidavit merely stating conclusory allegations is insufficient to withstand a defendant's properly supported motion for summary judgment.  *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (quoting Fed. R. civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading")).  The court must determine whether Mr. Finley has met his burden of

presenting specific facts to overcome CHM's Motion.

III.  Analysis

A.  Whether CHM is State Actor for Purposes of 42 U.S.C. § 1983

CHM argues that it is not subject to § 1983 because it and its employees are independent contractors and not state actors. CHM has not cited any evidence or legal authority for this argument. The court concludes that CHM is not entitled to summary judgment on this basis. "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West v. Atkins*, 487 U.S. 42, 56 (1988). The use of an independent contractor does not relieve the contractor or the Department of Corrections of their duty to provide adequate medical care to inmates. *See, e.g.*, *Jackson v. Fauver*, 334 F. Supp. 2d 697, 744 (D. N.J. 2004) (corporation providing medical services to New Jersey Department of Corrections was acting under color of state law when it provided medical care, as it essentially stepped into shoes of the Department of Corrections and assumed full responsibility for the medical department), *amended on reconsideration in part on other grounds*, 2005 WL 1677513 (D. N.J. 2005).

B.  Eighth Amendment

Mr. Finley alleges pursuant to 42 U.S.C. § 1983 that he was subjected to cruel

and unusual punishment and malpractice in violation of the Eighth Amendment.  (*See* Complaint (doc. # 2) at pp. 3, 6 of 8;  Mr. Finley's Opposition (doc. # 66) at p. 4 of 21).

1.  Cruel and Unusual Punishment

Section 1983 creates a cause of action where a  "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution."  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII.  "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  The Eighth Amendment prohibits prison officials

from being deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment.") (internal quotation marks and citation omitted).

An Eighth Amendment claim involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir.), *cert. denied*, 127 S.Ct. 131 (2006). "Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension." *Self*, 439 F.3d at 1230 (internal quotation marks and citation omitted). *See also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (Eighth Amendment violation recognized only if medical needs are "serious"). Under the subjective inquiry, the defendant must have acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

Deliberate indifference requires a higher degree of fault than negligence or even gross negligence. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted). An official acts with deliberate indifference if his or her

conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Berry*, 900 F.2d at 1496. The Supreme Court explained the test for deliberate indifference:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.

Thus, in order to assert an Eighth Amendment claim that prison officials were deliberately indifferent to his medical needs, Mr. Finley must demonstrate that (1) he suffered objectively serious medical needs and (2) that the prison officials actually knew of and deliberately disregarded those needs. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (two-pronged standard "requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious"); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (same) (citation omitted).

The evidence shows that CHM performed an Intake Screening for Mr. Finley on September 21, 2005, upon his arrival at JCDC. (*See* CHM's Exhibit A (doc. # 62-2)). Mr. Finley complained of a pre-existing facial rash upon his arrival at JCDC. (*See id.*).[1]

On September 28, 2005, Mr. Finley submitted a Medical Kite seeking treatment for shoulder pain and his skin rash. (*See* CHM's Exhibit C (doc. # 62-4)). After an

---

[1] Records from a prior incarceration in April of 2004 indicate that Mr. Finley also complained of a facial rash at that time. (*See* CHM's Exhibit B (doc. # 62-3)).

examination, Mr. Finley was prescribed a 7-day supply of hydrocortisone cream. (*See id.*; *see also* CHM's Exhibit F (doc. # 62-7)). Approximately one month later, on November 7, 2005, Mr. Finley submitted another Medical Kite seeking attention for his facial rash. (*See* CHM's Exhibit D (doc. # 62-5)). At his appointment with a licensed nurse practitioner on November 12, 2005, Mr. Finley reported that his rash had started 5 days earlier. (*See* CHM's Exhibit E (doc. # 62-6)). Mr. Finley was prescribed a 30-day supply of hydrocortisone cream. (*See* CHM's Exhibit E (doc. # 62-6), Exhibit F (doc. # 62-7) at p. 1 of 7).

After a further complaint of a facial rash, on December 21, 2005 Mr. Finley was prescribed a 21-day supply of "Tolfanate" cream and instructed on its use. (*See* CHM's Exhibit F (doc. # 62-7) at p. 4, 5 of 7; Exhibit G (doc. # 62-8)). Mr. Finley did not seek any further treatment until March and April of 2006, when he submitted Medical Kites complaining of skin irritation. (*See* CHM's Exhibits H and I (docs. # 62-9 and # 62-10)). Mr. Finley was prescribed a 30-day supply of Eucerin cream. (*See* CHM's Exhibit H (doc. # 62-9); *see also* Exhibit F (doc. # 62-7) at pp. 6, 7 of 7). Mr. Finley was subsequently released from JCDC and transferred to the custody of the Colorado Department of Corrections. (*See* CHM's Exhibit F (doc. # 62-7) at p. 6 of 7).

The evidence does not support Mr. Finley's claim for violation of the Eighth Amendment. Assuming without deciding that Mr. Finley's facial rash constituted an objectively serious medical need, the court concludes that Mr. Finley has not demonstrated that CHM acted with deliberate indifference. The evidence shows that CHM's employees responded to each of Mr. Finley's complaints by providing him with

8

treatment. Mr. Finley was seen and treated for his facial rash on September 28, 2005 (CHM's Exhibit C (doc. # 62-4)), November 12, 2005 (CHM's Exhibit E (doc. # 62-6)), December 21, 2005 (CHM's Exhibit G (doc. # 62-8)), March 13, 2006 (CHM's Exhibit H (doc. # 62-9)), and April 3, 2006 (CHM's Exhibit I (doc. # 62-10)). In response to Mr. Finley's complaints, CHM employees prescribed Mr. Finley three different kinds of ointment for his facial rash. Mr. Finley has not presented evidence that CHM employees were aware of a problem with his ointment or denied him treatment. (*See, e.g.,* Mr. Finley's unsigned Affidavit (doc. # 69) (no specific actors or dates alleged); CHM's Exhibit J (doc. # 62-11) at p. 2 of 13 (no specific dates alleged)).

There is no evidence in the record that Mr. Finley was prescribed a medication that was inappropriate for his condition. There is only Mr. Finley's conclusory allegation that CHM employees prescribed him "the wrong medication." (*See* Complaint (doc. # 2) at p. 3 of 8; Mr. Finley's Opposition (doc. # 66) at pp. 6, 7, 10 of 21 (reflecting only Mr. Finley's subsequent conclusory statements to Department of Corrections medical personnel that he was prescribed the "wrong medications."); CHM's Exhibit H (doc. # 62-9) (reflecting only Mr. Finley's conclusory statement that he was prescribed the "wrong medication.")).

After he was prescribed the alleged "wrong medication" on December 21, 2005, Mr. Finley did not seek any further treatment for three months. (*See* CHM's Exhibits H and I (docs. # 62-9 and # 62-10); Mr. Finley's Opposition (doc. # 66) at p. 12 of 21). When Mr. Finley did seek further treatment, CHM's employees provided him a different medication for his rash. Mr. Finley has made no showing that the course of treatment

9

provided by CHM employees so deviated from the standard of care as to reflect deliberate indifference. *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990) (plaintiff entitled to prove his case by establishing that doctor's "course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference in violation of his eighth amendment right to be free from cruel and unusual punishment."). Mr. Finley's conclusory allegation that he was prescribed "the wrong medication" is insufficient to resist CHM's motion for summary judgment.

Mr. Finley has not alleged or presented sufficient facts to show that CHM acted with deliberate indifference. *See Benson v. Cady*, 761 F.2d 335, 341 (7th Cir. 1985) (no Eighth Amendment claim where there was no allegation that physician "intentionally prescribed the incorrect medication or that he did so with the knowledge that it would harm [the inmate]"). Even if Mr. Finley had set forth evidence demonstrating that another medical provider would have attempted to treat him with a different medication, this would not serve to create a triable issue on his Eighth Amendment claim. *See Noll v. Petrovsky*, 828 F.2d 461, 462 (8th Cir. 1987) (Plaintiff "has only shown . . . that another physician in the same circumstance might have ordered different tests and treatment. This evidence raises questions of medical judgment; it does not show deliberate indifference."). As Mr. Finley has not demonstrated that CHM acted with deliberate indifference to his serious medical needs, CHM is entitled to summary judgment on Mr. Finley's Eighth Amendment claim.

    2.     Malpractice

Mr. Finley's allegation of malpractice does not state a claim for an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105, 106 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition" does not "state a valid claim of medical mistreatment under the Eighth Amendment.").

In responding to CHM's motion for summary judgment, Mr. Finley has not addressed CHM's argument whether the Complaint can be read to assert a state law tort claim. Mr. Finley merely reiterates CHM's arguments and asserts that those arguments create factual disputes that require a trial. (*See* Mr. Finley's Opposition (doc. # 66)). While *pro se* pleadings are to be construed liberally, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted), a court may not assume that a that a defendant has violated laws in ways that a plaintiff has not alleged. *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). Mr. Finley has alleged jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983 and violation of his constitutional rights. (*See* Complaint (doc. # 2) at pp. 3, 6 of 8). Nowhere has Mr. Finley indicated that he intended to assert a state law tort claim.

C.   Exhaustion of Administrative Remedies

CHM further moves for summary judgment based upon Mr. Finley's failure to

exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Prior to filing this civil action, Mr. Finley was required to exhaust administrative remedies pursuant to the PLRA. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Section 1997e(a) provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

"The Supreme Court recently . . . set forth a new standard to govern PLRA lawsuits: 'failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints.' " *Roberts v. Barreras*, 484 F.3d 1236, 1240 (10th Cir. 2007) (quoting *Jones v. Bock*, --- U.S. ----, ----, 127 S. Ct. 910, 921, 166 (Jan. 22, 2007) and citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223 (10th Cir. 2007)). Now "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." *Roberts v. Barreras*, 484 F.3d at 1241.

While CHM did not raise the defense of exhaustion of administrative remedies in its Answer (*see* doc. # 14), the Tenth Circuit has recognized that an affirmative defense may be raised by a motion for summary judgment. *See Smith v. Spain*, 133 F.3d 933 (Table), 1998 WL 4358 at *1 (10th Cir. Jan. 8, 1998) (affirmative defense of qualified immunity may be raised "by a motion to dismiss, a motion for summary judgment or by answer"); *Gressley v. Deutsch*, 890 F. Supp. 1474, 1493 (D. Wyo. 1994) (defendant could raise qualified immunity issue in a motion for summary judgment)

The court may take judicial notice of the administrative procedures governing

exhaustion of Mr. Finley's claims.  *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (court may take judicial notice of agency rules and regulations); *Antonelli v. Ralston*, 609 F.2d 340, 341, n. 1 (8th Cir.1979) (judicial notice taken of Bureau of Prisons' Program Statement).

The JCDC had specific administrative procedures for inmate grievances while Mr. Finley was incarcerated there.  The Jefferson County Detention Facility Handbook ("Handbook") contains specific grievance and appeal procedures that must be followed whenever an inmate believes he or she has been aggrieved.  The Handbook informs inmates

> You must submit a grievance form within 5 days of the incident or situation upon which the grievance is based.
>
> The grievance shall fully state the date, time, and location of the incident or situation, name(s) of persons involved and complete details of the incident or situation.  Grievances, which contain obscene language or sexual connotations, other than direct quotes, will not be accepted.
>
> After review and subsequent investigation of the grievance, a staff member will respond to you in writing, advising of the results of the investigation.
>
> Any disciplinary action taken against staff members will not be divulged.
>
> If you are not satisfied with the disposition of your grievance, you may appeal that disposition, is writing, within 5 days of the receipt of the response, to the Administrative Lieutenant.  The Administrative Lieutenant, or his designee, will review, and respond to you in writing.

(*See* CHM's Exhibit K (doc. # 62-12) at p. 4-5 of 5).

First, Mr. Finley incorrectly denied that JCDC had a grievance procedure.  (*See* Complaint (doc. # 2) at p. 7 of 8).  The evidence shows that JCDC had a grievance procedure for inmates.  Further, while Mr. Finley checked "Yes" that he exhausted

13

available administrative remedies (*see* Complaint (doc. # 2) at p. 7 of 8), he did not attach copies of any grievance proceedings or make any particularized allegations concerning exhaustion. In support of his allegation that he exhausted his administrative remedies, Mr. Finley alleged merely that he "wrote kites." (*See id*). Mr. Finley's kites do not demonstrate that he exhausted JCDC's administrative grievance process.

Mr. Finley has not specifically responded to CHM's argument that he did not exhaust his administrative remedies. Mr. Finley has not proffered evidence that he followed any grievance procedure prior to filing suit. As Mr. Finley has failed to demonstrate that he exhausted his administrative remedies, he is prohibited from pursuing his claims in this civil action. Mr. Finley's claims are properly dismissed without prejudice. *See Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1213 (10th Cir. 2003) ("dismissal based on lack of exhaustion . . . should ordinarily be without prejudice").


D.     Defendant "Jefferson County Detention Center Medical Department"

On December 28, 2006, the court advised Mr. Finley that Defendant Jefferson County Detention Center Medical Department has never been served in this action, as it does not exist as an entity that may be served. (*See* Courtroom Minutes/Minute Order (doc. # 20); unexecuted return of service (doc. # 12)). Mr. Finley indicated that he wanted to "see" about the matter. (*See* Courtroom Minutes/Minute Order (doc. # 20)). The court advised Mr. Finley to address the matter promptly. (*See id.*).

Fed. R. Civ. P. 4(m) provides:

"[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. . . .

The Complaint was filed on August 15, 2006. As of this date, fourteen months have passed since the filing of the Complaint and Mr. Finley has not identified, requested service on, or provided proof of service on any identifiable Defendant other than CHM. Without proof of service, the court lacks personal jurisdiction over a defendant. *See Oklahoma Radio Associates v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) ("Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served.") (citations omitted). Defendant "Jefferson County Detention Center Medical Department" is properly dismissed from this action pursuant to Fed. R. Civ. P. 4(m) for failure to timely effect service and pursuant to D.C. COLO. LCivR 41.1 for failure to prosecute.

Accordingly, IT IS RECOMMENDED that Defendant Correctional Healthcare Management's ("CHM") Motion for Summary Judgment (filed May 24, 2007) (doc. # 62) be GRANTED, that summary judgment be entered on the Complaint in favor of Defendant Correctional Healthcare Management and against Plaintiff Finley, and that this civil action be dismissed.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions

of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 12th day of October, 2007.

BY THE COURT:


   s/Craig B. Shaffer
United States Magistrate Judge